Opinion of the Court, by
Judge Logan.
THIS is a suit for land, in which it becomes necessary to investigate the following entry:
“Ephraim Gaither enters 2,049 acres, beginning where the Salt-Lick trace that goes by the Flat-Link, crosses Hinkston’s fork, and on the north side of the said fork, running N. 30 E. 534 poles; thence S. 60 E. 600 poles; thence S. 30 W. 534 poles; then N. 60 W. 600 poles to the beginning.”
To adjoin this entry, Peter Henry, under whom the complainants claim, entered 2,400 acres, beginning at the north corner, and running with the line thereof “S. 60 E. 600 poles; then N. 30 E. 640 poles; then N. 60 W. 600 poles; then S. 30 W. 640 poles, to the beginning.”
The calls in these entries which are proper for our examination, are, Hinkston’s fork, the Salt-Lick trace, and the Flat-Lick. Those objects were all notorious at the date of these entries; but there were two traces generally known by the appellation of the Salt-Lick *232 trace, which crossed Hinkston so remotely from each other, as that the entry, if placed at one, would not occupy any part of the same land, which, by locating it at the other, would be comprehended.
Unless, therefore, the call for the Flat-Lick should designate, with reasonable certainty, the trace intended, so that from that call the selection of one trace from the other, would have been the obvious result, the entry ought not to be sustained. This call, however, would most amply have obviated the doubt between the two traces, and shown clearly the one intended, only for the circumstance of another lick, which had obtained the same name, being situated at the junction of the two roads. How far this lick may affect the certainty of the description in the call for the Flat-Lick, is the real point upon which the fate of these entries is suspended.
The lick at the intersection of the two roads, was equally applicable to either road, and did not, therefore, answer the purpose of designating one from the other, at their crossing on Hinkston. Beyond their junction, there was no other path crossing Hinkston, which rendered a call of discrimination between them necessary, in order to avoid the objection of uncertainty and want of identity as to the one intended. For what purpose, then, a reference could have been made to that lick, we cannot imagine; for, according to no possible construction, could it contribute to the description and identity of land at either crossing on Hinkston; unless, indeed, there had been but one trace. But why, then, refer to the lick at all? For if there had been but one trace, it is quite improbable that an object on that trace far less notorious than the trace itself, would have been referred to for the purpose of pointing out the trace. The lick had become notorious from the notoriety of the road, which, as a principal highway to and from the country, possessed unquestionable notoriety. But where this did not form the only road, and there were other forks which were also notorious by the same name, the necessity of adopting some additional description which was peculiar to one, and not applicable to another, in contradistinction therefrom, became evident, in conducting the mind to a definite place on such road. The expression of the locator, in his call for that Salt-Lick trace which led by *233 the Flat-Lick, implies the existence of another trace, and that he had resorted to this as a distinguishing call between them. As such, we think the land was well described, and that the entry ought, therefore, to be sustained.
With regard to the road which led by Ruddell’s, it need be observed, that that road did not cross Hinkston’s fork. It crossed below the junction of Stoner and Hinkston, where the stream was generally called the South Fork of Licking, and could not have been understood as the water course and trace called for in these entries.
It only remains, therefore, to determine upon the manner of surveying those entries; with respect to which, no doubt exists. Gaither’s entry should be surveyed, beginning on the north side of Hinkston’s fork, where the upper trace crossed, and thence pursuing the courses and distances specified in the entry; and Henry’s entry should then begin at the north corner thereof, and thence with the courses and distances therein mentioned; and for all the land which will be thereby comprehended, and which is also within the survey and patent of said claim, the appellants have the superior claim, and the appellees must be decreed to convey.
The decree of the circuit court must, therefore, be reversed with costs, and the cause remanded, in order that such decree may be rendered as is consistent with this opinion, and law and equity.